IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OBRA FOSTER, JR., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-2843 |
| | § | |
| MICHAEL ASTRUE, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court in this appeal from a denial of Social Security disability insurance benefits ("DIB") and supplemental security income ("SSI") are Plaintiff's Motion for Summary Judgment (Docket Entry No. 12) and Defendant's Motion for Summary Judgment (Docket Entry No. 9).

The Court, having considered the motions, all relevant filings, and the applicable law, **GRANTS** Plaintiff's motion for summary judgment (Docket Entry No. 12), **DENIES** Defendant's motion for summary judgment (Docket Entry No. 9), **VACATES** the decision of the administrative law judge, and **REMANDS** this case for further proceedings not inconsistent with this opinion.

### I.   CASE BACKGROUND

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration (the

"Commissioner") regarding his claims for DIB under Title II and SSI under Title XVI of the Social Security Act ("the Act").

Plaintiff filed his application for DIB and SSI in August 2005, alleging disability due to "back problems, hand problems, [and] depression" since January 1, 2004. Tr. 86-88. At a hearing held on May 23, 2007, the administrative law judge (the "ALJ") heard testimony from Plaintiff and a vocational expert (the "VE"). Tr. 820-853. In his decision issued on October 17, 2007, the ALJ found that Plaintiff was not disabled. Tr. 17.

The Appeals Council denied Plaintiff's request for review. Tr. 5-7. Accordingly, the ALJ's decision became the Commissioner's final decision for purposes of this Court's review.

### A.    Factual Background

At the hearing held on May 23, 2007, Plaintiff testified that he was forty-seven years old and had earned a high school diploma. Tr. 822. He served in the military during 1978-79, and was honorably discharged. Tr. 829. He previously worked as a carpenter, but had not worked full-time since January of 2004. Tr. 823. He occasionally worked as a day laborer after January 2004, but was asked not to return because he could not get along with the other workers. Tr. 825-26.

Plaintiff stated that, two and one-half years ago, he accidentally cut the tendons on two right-hand fingers (his dominant hand) while using a power tool. It left him unable to

2

bend the two fingers, grip or hold anything in his right hand, write without difficulty, or properly use hand tools.  Tr. 827-28.

Plaintiff also testified to having painful back problems due to an old tailbone fracture and a curved spine, which limit his ability to sit or bend.  *Id*.  He stated that he receives medical care and prescription pain relievers through the Veteran's Administration ("VA").  Tr. 829.  He broke his right foot two years ago and, although it healed, he can only stand for forty-five minutes to an hour before needing to sit down.  Tr. 830.  He broke his left leg in the early 1980s, and it continues to cause him pain.  Tr. 832.  Plaintiff stated that, during a typical eight-hour work day, he would be able to stand or walk for three hours and sit for two or three hours before needing to move.  Tr. 830.  He cannot bend over or stoop without pain, or climb stairs or ladders.  Tr. 831.  He could probably lift twenty pounds with his left hand.  *Id*.

Plaintiff testified that he is not a "people person" and prefers to be alone.  Tr. 832.  He cannot tolerate people raising their voice at him, and routinely had physical and verbal confrontations with his bosses and co-workers.  Tr. 833-34.  He has never held a job in the past fifteen years that did not end in confrontation with a supervisor, although he made efforts to avoid confrontations with customers.  Tr. 834.  At the time of the hearing, he was seeing a VA psychiatrist once a month.  The psychiatrist was treating him with Prozac and Trazadone, which left him feeling "drugged up" in the morning.  Tr. 835-36.

Plaintiff testified at the hearing that he was homeless, but received mail and telephone messages through his mother.  Tr. 837.   He was unable to reside with her because of conflict with his siblings.   He had thought of suicide, especially after the deaths of two younger brothers and his own son.  Tr. 838.  He reported having trouble focusing his thoughts, and experienced paranoid thinking.  Tr. 839.  He sometimes heard "voices" talking to him.  Tr. 840.  Plaintiff acknowledged a history of drug and alcohol addiction, and stated that he underwent treatment through the VA.  He denied using drugs or alcohol during the past year.

Plaintiff agreed with his attorney that, in the past, he had self-medicated his depression with alcohol and drugs.  Tr. 841.  He testified to having outbursts of anger and crying spells, and experiencing difficulty in maintaining concentration, persistence, and pace when trying to accomplish something.  Tr. 842-43.  He stated that he had been admitted to the VA hospital psychiatric unit three times since January 2004.  *Id*.  Although he spent most of his days on the street in isolated meditation, he testified to having days where he was able to function around people.  Tr. 845-46.

The VE testified at the hearing that a hypothetical individual with Plaintiff's physical and mental conditions[1] would not be able to do Plaintiff's past work.  Tr. 847.  When asked

---

[1]The hypothetical individual " could stand or walk about six hours in an eight hour day with normal breaks or sit for six, lifting or carrying ten pounds frequently or 20 pounds occasionally, having the option to sit or stand.  The following are never: ropes, ladders or scaffolding, kneeling, and crawling.  The following are occasionally: stooping . . . and crouching.  Regarding handling and fingering with the right dominant, I' m talking the right ring finger and the little finger are frozen straight and are of no use.  Regarding the right dominant hand, the thumb, index, and middle fingers can be used continually.  Mentally limited to a simple, routine

4

if there were other work in the regional or national economy regarding the individual, the VE testified that there were light, unskilled jobs such as electronics worker, assembler, and sorter, of which there were over 1,000 such jobs in the immediate metropolitan area and 200,000 nationally.  Tr. 847.  Other sedentary work with little public contact included final assembler, order clerk, and lensing sorter or polisher, for which there were 1,000 such jobs. Tr. 848.  Under cross-examination, the VE stated that the hypothetical individual would not be retained in employment if he were unable to take instruction from a supervisor and work around other people.  Tr. 850.  If the individual needed to take two or three unscheduled work breaks just to "get away" by himself, or had reduced productivity due to an inability to focus or concentrate, he would be unemployable.  Tr. 851-852.

The ALJ issued his unfavorable decision on October 17, 2007.

**B.     The ALJ's Evaluations and Findings**

The ALJ made the following findings with attendant evaluations of the evidence:

(1)     Plaintiff was insured under the Act through June 30, 2006. Tr. 19.

(2)     Plaintiff had not engaged in substantial gainful employment since January 1, 2004, the alleged onset date.  *Id*.

(3)     Plaintiff had the severe impairments of drug (cocaine) and alcohol addiction, lumbar spurs, right foot problems, depression, and schizophrenia.  *Id*.

---

work environment having little or no contact with public."  Tr. 847.

(4)     Plaintiff's impairments, including the substance use disorders, met Listings 12.04 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*.

The ALJ found that Plaintiff's mental impairments, including the substance use disorders, met the criteria for Listings 12.04 and 12.09.  He stated that Paragraph B criteria were met because Plaintiff had marked difficulties in maintaining concentration, persistence, or pace, and had repeated episodes of decompensation with extended duration.  Because Plaintiff's mental impairments, including the substance use disorders, caused at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, Paragraph B was satisfied.

The ALJ found Plaintiff credible regarding his asserted difficulties in maintaining concentration, persistence, and pace; in having wandering thoughts; in being hospitalized for psychiatric reasons three times since January 2004; and for being depressed and getting angry too often.  Tr. 19-20.

(5)     If Plaintiff were to stop his substance use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities; therefore, Plaintiff would continue to have a severe impairment or combination of impairments.  *Id*.

The ALJ stated that Plaintiff's physical problems would remain regardless of his drug or alcohol use.

(6)     If Plaintiff were to stop his substance use, he would not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 20.

6

The ALJ considered Paragraph B criteria under Listing 12.04, and determined that Plaintiff's depression and schizophrenia had a mild impact on his ability to perform daily activities; a moderate impact on his ability to maintain social functioning; a mild limitation in concentration, persistence, and pace; and that he had one or two episodes of decompensation in work or work-like settings.  Tr. 20-21.  He found no evidence to support Paragraph C criteria, as Plaintiff had no documented history of a mental disorder of at least two years' duration that had caused more than a minimal limitation of ability to do any basic work activity.   Tr. 21.

(7)    If Plaintiff were to stop his substance use, he would have the residual functional capacity ("RFC") to perform the exertional demands of a wide range of light work, or work which is generally performed while standing or walking frequently (more or less six hours in an eight-hour work day) and required maximum lifting of twenty pounds occasionally, ten pounds frequently.  Plaintiff's RFC to perform the exertional demands of the full range of light work was reduced by the following limitations: the option to sit or stand at will without leaving the workstation; occasionally stooping and crouching; never climbing ropes, ladders, or scaffolding; never kneeling or crawling; limited handling and fingering with the right hand; and limited to a simple, routine work environment with little or no contact with the general public.  *Id*.

The ALJ noted that Plaintiff stated he was unable to work because of damaged tendons in the fourth and fifth fingers of his right dominant hand; an inability to bend or grip

with his right hand, use hand tools properly, or hold a hammer or saw; and back problems, swayback, knee problems, and a broken foot two years ago, which limit his ability to stand or sit for long periods of time or bend over too much. He further noted that Plaintiff attempted to work as a day laborer after January 2004, but was barred due to confrontations with other workers. Tr. 22. The ALJ noted that Plaintiff traveled on foot (or by bus when he had the money), could stand/walk forty-five minutes to an hour (before needing to sit down) in an eight-hour work day, could stand two and one-half to three hours and sit three hours in an eight-hour work day, could lift twenty pounds with his left hand, but could not bend over due to back pain, climb stairs or ladders, or bend his neck. Plaintiff preferred to be off by himself away from people, had problems with supervisors and had confrontations with them, and was fired from numerous jobs due to confrontations. *Id*.

The ALJ further noted that Plaintiff testified to taking Prozac, Trazadone, Naproxen, and a sleep medication and to seeing a psychiatrist once a month, but that he feels groggy and drugged in the morning. Plaintiff has problems sleeping, has flashbacks, thinks of suicide, tries to control his anger by staying away from people, occasionally hears voices, underwent substance use treatment, and has been "clean" for a year. *Id*. Plaintiff reported drinking when depressed and having difficulty finishing projects due to problems maintaining concentration, persistence, and pace. Tr. 23. Plaintiff stated that he was hospitalized for psychiatric problems three times since January 2004 and wants to avoid being sent back to prison for aggravated assault. The ALJ was of the opinion that, if Plaintiff stopped the

8

substance use, his medically-determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. *Id.*

The ALJ noted that physicians in Plaintiff's November 2005 medical records confirmed his back and hand problems, but that the underlying lumbar x-rays showed only mild narrowing and a small osteophyte formation. Plaintiff failed to follow his treating physician's recommendations in 1993, August 2005, and September 2005. *Id.* The ALJ noted discrepancies between Plaintiff's subjective limitations and his hospitalization records, as the records showed Plaintiff had no problem getting on and off an examining table and that he had a normal walking gait. *Id.* The ALJ further discounted Plaintiff's credibility because of his felony convictions and incarceration, his use of alcohol and illegal drugs, his lack of hospitalizations except for substance use, the lack of a work history while using drugs and alcohol, and lying to physicians regarding his drug and alcohol abuse in October of 2005. *Id.* The ALJ expressly gave Plaintiff "the benefit of the doubt" regarding his claims of back and foot pain and medication-induced drowsiness.

The ALJ noted that all of Plaintiff's hospitalizations from September 1989 through November 2005 were directly related to cocaine and alcohol abuse. The ALJ observed that, at the hearing, Plaintiff was well-groomed, in good physical condition, well-spoken, and admitted to having an anger problem. Tr. 24.

(8)     If Plaintiff were to stop his substance use, he would [remain] unable to perform past relevant work. *Id*.

(9)     Plaintiff was forty-three years old as of the alleged disability onset date, which is defined as a younger individual. *Id*.

(10)     Plaintiff had a high school diploma and spoke English. *Id*.

(11)     Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff was "not disabled," whether or not he had transferrable job skills. *Id*.

(12)     If Plaintiff were to stop his substance use, considering his age, education, work experience, and RFC, there would be a significant number of jobs in the national economy that he could perform. *Id*.

The ALJ was of the opinion that, even if Plaintiff were to stop his substance use, he would not have the RFC to perform the full range of light work.  The VE testified at the hearing that a hypothetical individual with Plaintiff's RFC and background, and who did not have a substance use problem, would be able to perform the requirements of such light, unskilled occupations such as electronics worker, an assembler, and a sorter, with over 1,000 such jobs available in the regional economy and 200,000 nationally.  Accordingly, if Plaintiff were to stop his substance use, he would be capable of making a successful adjustment to work that exists in significant numbers in the national economy, and would not be disabled. Tr. 25.

(13)    Because Plaintiff would not be disabled if he were to stop his substance use,

his substance use is a contributing factor material to the determination of disability, and he

has not been disabled at any time from the alleged onset date through the date of the ALJ's

decision.  Tr. 25.

The ALJ concluded that Plaintiff was not disabled and denied his claims. *Id.*

## II.   STANDARD OF REVIEW AND APPLICABLE LAW

A motion for summary judgment under Federal Rules of Civil Procedure Rule 56

requires the Court to determine whether the moving party is entitled to summary judgment

as a matter of law based on the evidence thus far presented.  FED. R. CIV. P. 56(c).  Summary

judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  *Kee v.

City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001).  A genuine issue of material fact exists

if a reasonable fact finder could enter a verdict for the non-moving party.  *Crawford v.

Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  The Court views the evidence

in the light most favorable to the non-moving party and draws all reasonable inferences in

that party's favor.  *Id.*

Judicial review of a final decision by the Commissioner denying disability insurance

benefits is limited to the determination of whether substantial evidence in the record supports

the decision and whether the ALJ applied proper legal standards in evaluating the evidence.

*Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  If the Commissioner's decision satisfies both of these requirements, it must be affirmed.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

### A.     "Substantial Evidence"

The widely-accepted definition of substantial evidence is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Carey*, 230 F.3d at 135.  It is "something more than a scintilla but less than a preponderance."  *Id*.  The Commissioner has the responsibility of deciding any conflict in the evidence.  *Id*.  If the findings of fact contained in the Commissioner's decision are supported by substantial evidence appearing in the record, they are conclusive, and this Court must affirm.  42 U.S.C. § 405(g).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the Court overturn it.  *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  In applying this standard, the Court is to review the entire record, but may not re-weigh the evidence, try the issues *de novo*, or substitute  its judgment for that of the Commissioner.  *See Brown*, 192 F.3d at 496.  In other words, the Court is to defer to the Commissioner's decision as much as possible without making its review meaningless.

### B.     Legal Standard

In order to obtain disability insurance benefits, a claimant bears the ultimate burden of proving that he is disabled within the meaning of the Act.  *Wren v. Sullivan*, 925 F.2d 123,

125 (5th Cir. 1991).   Under the applicable legal standard, a claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(a); *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).   The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3).   The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*., § 423(d)(2)(A).   The mere presence of an impairment is not sufficient to establish that the claimant is suffering from a disability.   Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."   *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992).   Further, a claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured.   *Ivy v. Sullivan*, 898 F.2d 1045, 1948 (5th Cir. 1990).

To determine whether a claimant is capable of performing any substantial gainful activity, the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

(1)     a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

(2)     a claimant will not be found to be disabled unless he has a "severe impairment";

(3)     a claimant whose impairment meets or is equivalent to a Listed impairment will be considered disabled without the need to consider vocational factors;

(4)     a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

(5)     if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).  By judicial practice, the claimant bears the burden of proof on the first four of these steps, while the Commissioner bears the burden of proof on the fifth step.  *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999); *Brown*, 192 F.3d at 498.  The Commissioner can satisfy his burden either by reliance on the Medical-Vocational Guidelines of the Regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  If the Commissioner satisfies his burden of proof as to the fifth step, then the burden shifts back to the claimant to prove he cannot perform the work suggested.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled.  *Greenspan*, 38 F.3d at 236.

### III.   ANALYSIS

Plaintiff raises the following five issues in his motion for summary judgment:

(1)   Plaintiff's substance use is not a "contributing factor."

(2)   Plaintiff's mental impairment qualifies as a Listed impairment.

(3)   Plaintiff's finger impairments are "severe."

(4)   The ALJ's RFC determination is not supported by substantial evidence.

(5)   The ALJ's determination of "not disabled" is not supported by substantial evidence.

Defendant argues that the ALJ's decision should be affirmed because it applied proper legal standards and is supported by substantial evidence.

### A.   Substance Use as a Contributing Factor

Plaintiff complains that the ALJ erred in finding his substance use[2] a contributing factor material to the determination of his disability.  (Docket Entry No. 12, p. 6.)

Generally, a finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).  However, if a claimant is found to be disabled, but there is evidence that he is addicted to drugs or alcohol, the ALJ must also determine whether the drug or alcohol addiction is a contributing factor material to the determination of disability.  42 U.S.C. §

---

[2]The ALJ and the parties used the terms substance " use" and " abuse" interchangeably throughout these proceedings.  The Act refers to the condition as "alcoholism or drug addiction."  *See* 42 U.S.C. § 1382c(a)(3)(J).

1382c(a)(3)(J); 20 C.F.R. § 404.1535(a).  Substance abuse is a material contributing factor if, in its absence, the claimant's remaining limitations would not be disabling. *Id.* at § 404.1535(b)(2)(I).  If it is found to be a material contributing factor, then the claimant is not considered disabled and is ineligible to receive benefits. 42 U.S.C. § 1382c(a)(3)(J).  The burden to prove that substance abuse is not a contributing factor material to his disability lies with the claimant. *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).

In the instant case, the ALJ found that Plaintiff's symptoms medically equaled the criteria of Listing 12.04 and 12.09 when the functional impairments resulting from his substance use were considered, but that his symptoms were *not* disabling when his substance use was excluded from consideration.  Tr. 19-25.  He further found that, in absence of substance use, Plaintiff retained a RFC for light work, with certain identified restrictions, and that appropriate work existed in significant numbers in the national economy.  Tr. 25.

Plaintiff argues that the ALJ's finding regarding substance use as a contributing factor is not supported by substantial evidence because medical records show he continued having mental problems while "clean."  As proof, Plaintiff points out that, during his October 2005 week-long hospitalization, he tested negative for illegal drugs and alcohol, but reported worsening depression, suicidal thoughts, and other mental problems.  This Court notes, however, that these same records reflect Plaintiff's statement to his doctors that he had consumed cocaine and alcohol just a few days before the hospitalization.  Tr. 366.  These records further show that Plaintiff was given information on vocational rehabilitation, but

that he declined treatment as he was "focused on obtaining disability."  Tr. 369.  Upon discharge from the hospital, he reported mood improvement without suicidal thoughts, and planned to return to the substance abuse program.  Tr. 370.  His discharge diagnoses included "polysubstance abuse."  Tr. 365.  He was diagnosed on May 27, 2006, with "substance-induced depressive disorder, cocaine abuse, alcohol abuse."  Tr. 728.

Plaintiff's medical records further show that he was again admitted to the VA mental health unit on May 31, 2006, "for treatment of depression and polysubstance abuse."  Tr. 787.  He reported drinking a twelve pack of beer per day and smoking crack cocaine.  Tr. 726.  Hospital records dated June 2, 2006, reported that Plaintiff's "[m]ain problems are substance abuse and economic."  Tr. 780.  Laboratory test results dated June 1, 2006, were reported as positive for cocaine.  Tr. 785.  Plaintiff was reported as non-compliant with substance abuse therapies and antidepressant medications.  Tr. 726, 784-85.  Contrary to Plaintiff's assertion, the medical records before this Court do not reveal any mental health treatment unrelated to, or independent of, his substance abuse, any objective findings or reports that Plaintiff was "clean" during the relevant time period, or that his mental health problems were unrelated to his substance use.

Plaintiff also argues that his own testimony shows that his mental impairments continued in absence of substance abuse.[3]  Plaintiff testified at the hearing that he had been

---

[3]Plaintiff did not submit any medical records regarding this 2006-2007 psychiatric and substance abuse therapy, and the ALJ was without benefit of any objective medical evidence supporting Plaintiff's subjective allegations of unabated mental disabilities while substance-free.

substance-free for almost a year, was taking Prozac and Trazadone (antidepressants), and was trying to see a VA psychiatrist once a month.  Tr. 835.  The drugs reportedly left him "dragging," but he stated that he needed them for his depression.  Tr. 836.  He stated that, on a typical day, he was "in a downward mood" and had no strength.  *Id*.  He took sleeping pills to help him sleep and ate meals depending on his mood.  Tr. 838.  He complained that his mind tended to wander, and that he sometimes heard voices talking to him.  Tr. 840.  He had crying spells "off and on," and found it difficult to finish projects because he would lose interest.  Tr. 842.  On his worst days, he was angry and "just very, very moody."  Tr. 845.

It was evaluating these subjective complaints, the ALJ was of the opinion that, if Plaintiff discontinued his substance use, his medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of such symptoms were not entirely credible.  Tr. 23.  The ALJ carefully set forth those factors leading him to find Plaintiff not entirely credible, including his lying about his drug and alcohol use, the lack of hospitalization for reasons other than substance abuse, and a lack of reference to any walking or standing problems in his hospitalization records.  *Id*.  The ALJ did accept Plaintiff's claims of back and foot pain and drowsiness caused by his medications.

It was Plaintiff's burden to prove that substance abuse was not a contributing factor material to his disability claim.  *Brown*.  Based on this Court's review of the medical evidence and record as a whole, Plaintiff did not, and does not, meet his burden of proving

18

that his mental impairments continued in absence of substance abuse.  Substantial evidence supports the ALJ's finding that Plaintiff's substance use was a material contributing factor to his disability, and no error is shown.

**B.     Listed Mental Impairment**

Plaintiff argues that his mental impairments that are not addiction-related meet or equal the criteria for a listing under 12.03 and/or 12.04, and that the ALJ's determination to the contrary is not supported by substantial evidence.

Listing 12.03, regarding schizophrenic, paranoid, and other psychotic disorders, requires the following:

> 12.03   Schizophrenic, Paranoid and Other Psychotic Disorders: Characterized by the onset of psychotic features with deterioration from a previous level of functioning.  The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> > A.     Medically documented persistence, either continuous or intermittent, of one or more of the following:
> >
> > > 1.     Delusions or hallucinations; or
> > >
> > > 2.     Catatonic or other grossly disorganized behavior; or
> > >
> > > 3.     Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
> > >
> > > > a.     Blunt affect; or
> > > >
> > > > b.     Flat affect; or

       c.      Inappropriate affect;

Or

    4.      Emotional withdrawal and/or isolation;

And

B.    Resulting in at least two of the following:

    1.      Marked restriction of activities of daily living; or

    2.      Marked difficulties in maintaining social functioning; or

    3.      Marked difficulties in maintaining concentration, persistence, or pace; or

    4.      Repeated episodes of decompensation, each of extended duration;

Or

C.    Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1.      Repeated episodes of decompensation, each of extended duration; or

    2.      A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3.      Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Plaintiff further argues that he meets or equals the following criteria for a 12.04

Listing:

12.04   Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

    A.    Medically documented persistence, either continuous or intermittent, of one of the following:

        1.    Depressive syndrome characterized by at least four of the following:

            a.    Anhedonia or pervasive loss of interest in almost all activities; or

            b.    Appetite disturbance with change in weight; or

            c.    Sleep disturbance; or

            d.    Psychomotor agitation or retardation; or

            e.    Decreased energy; or

            f.    Feelings of guilt or worthlessness; or

            g.    Difficulty concentrating or thinking; or

            h.    Thoughts of suicide; or

            I.    Hallucinations, delusions or paranoid thinking; or

                *    *    *    *

    And

B.   Resulting in at least two of the following:

1.   Marked restriction of activities of daily living; or

2.   Marked difficulties in maintaining social functioning; or

3.   Marked difficulties in maintaining concentration, persistence, or pace; or

4.   Repeated episodes of decompensation, each of extended duration;

Or

C.   Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1.   Repeated episodes of decompensation, each of extended duration; or

2.   A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3.   Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Plaintiff necessarily argues that he meets or equals these Listing criteria *independently*

*of* symptoms and problems attributable to his drug and alcohol abuse.  However, as reflected

in the Court's earlier discussion, the objective medical evidence does not separate plaintiff's

addiction-related impairments from any mental impairments that are *not* addiction-related.

22

Plaintiff attempts to support his argument with a paragraph generally summarizing the objective medical evidence and his own subjective complaints, but fails to correlate such evidence to any particular criteria under 12.03 or 12.04 and show that such symptoms are unrelated to his substance use.

Listings criteria are "demanding and stringent," and the mere diagnosis of a condition will not suffice. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Under Sections 404.1525(d) and 416.925(d), the claimant must have a medically determinable impairment that satisfies all of the criteria in the listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). The burden of proof rests with a claimant to provide and identify medical signs and laboratory findings that support all criteria for a step three listing determination. *Id*.

Contrary to Plaintiff's contentions, there is substantial evidence in the record to support the ALJ's finding that Plaintiff's impairments, when considered with his substance abuse disorder, meet the Listing criteria. Plaintiff fails to meet his burden of proving that, in absence of his substance use disorder, his mental impairments meet or equal a Listing criteria, and no error is shown.

### C. "Severe" Finger Impairments

Under his third issue, Plaintiff argues that the ALJ improperly evaluated the impairment severity of his two "frozen" right-hand fingers at step two. Plaintiff testified that, having accidentally damaged tendons on the fourth and fifth fingers of his dominant hand in

23

2003, "I can't do anything. . . . I can't bend them at all, and so I'm not able to grip anything or . . . hold anything with my hand, barely can write with it." Tr. 827.  He testified he was unable to use hand tools properly, which hurt his job performance.  In answer to a question regarding his ability to use any type of hand tool with his right hand, he testified, "I can't do it.  Not with this hand." Tr. 828.

According to his medical records, Plaintiff was seen on July 29, 2005, for follow-up from a 2003 laceration to his right hand; he had cut the palmar surface of his right hand over the small, ring, and long fingers.  Tr. 493.  His physicians noted damage to the small and ring finger flexor tendons of the right hand, and stated that he was a "good candidate for surgical correction of [the] flexor tendons."  *Id*.  Passive range of motion exercise through occupational therapy was recommended.  *Id*.  He was given referrals for reconstructive surgery and occupational therapy in 2003, but failed to follow through.  An October 2005 physical examination reflected Plaintiff's inability to flex his right fourth finger at the proximal and distal interphalangeal joints or his fifth finger at the distal interphalangeal joint. Tr. 367.  Plaintiff argues that these finger impairments qualify as "severe" and that the ALJ applied an incorrect step two legal standard.

At step two of the disability analysis, the ALJ considers whether the claimant has a medically determinable impairment or combination of impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c).  A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id*., § 404.1520(c).  In

24

*Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Fifth Circuit interpreted the term "severe" found in 20 C.F.R. § 404.1520(c) and set forth the following legal standard applicable at step two of the evaluation process:

> An impairment can be considered as not severe only if it is a slight abnormality having such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

*Id*. at 1101; *see also Loza v. Apfel*, 219 F.3d 378, 390-91 (5th Cir. 2000) (reaffirming this standard following federal regulatory revisions).  The Fifth Circuit then held that, unless the ALJ references the *Stone* opinion itself, another opinion with the same effect, or an express statement of this standard, then an assumption would arise that the ALJ applied the wrong standard.  752 F.2d at 1106.

In the instant case, the ALJ did not reference *Stone* or another opinion, but set forth the following standards for his step two evaluation:

> An impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is 'not severe' when medical or other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to do work.

Tr. 17.

In concluding that Plaintiff had severe impairments of drug and alcohol addiction, lumbar spurs, right foot problems, depression, and schizophrenia, the ALJ stated that,

> Since these impairments impose more than a minimal effect on the claimant's
> ability to perform some basic work activities, they are considered 'severe'
> impairments in accordance with Social Security Rulings 85-28 and 96-3p.

Tr. 19.  Because the ALJ did not expressly reference *Stone* or an equivalent opinion, this

Court must assume that the ALJ applied an improper step two standard unless the standards

otherwise set forth by the ALJ are "an express statement of [the *Stone*] standard."  *Stone*, 752

F.2d at 1106.

As stated, a severe impairment under the regulations is "any impairment or

combination of impairments which significantly limits [a claimant's] physical or mental

ability to do basic work activities."  20 C.F.R. § 404.1520(c).  Under *Stone*, an impairment

is not severe "only if it is a slight abnormality having such minimal effect on the individual

that it would not be expected to interfere with the individual's ability to work."  752 F.2d at

1101; *see also Story v. Astrue*, 294 F. App'x 883, 884 (5th Cir. 2008) (unpublished);

*Robinson v. Barnhart*, 183 F. App'x 451, 455 (5th Cir. 2006) (unpublished).

Here, the ALJ stated that "an impairment or combination of impairments is severe

within the meaning of the regulations if it significantly limits an individual's ability to

perform basic work activities," citing 20 C.F.R. § 404.1520(c).  Tr. 17.  He further stated that

"an impairment or combination of impairments is 'not severe' when medical and other

evidence establish only a slight abnormality or a combination of slight abnormalities that

would have *no more than a minimal effect* on an individual's ability to work," citing 20

C.F.R. §§ 404.1521 and 416.921 and Social Security Rulings 85-28, 96-3p, and 96-4p.  *Id*.

(emphasis added).  This latter statement is inconsistent with *Stone*; under the Fifth Circuit's standard, a non-severe impairment "would *not be expected to interfere* with the individual's ability to work." 752 F.2d at 1104-05 (emphasis added).  Stated succinctly, the ALJ's standard recognized that a non-severe impairment could have a minimal effect on Plaintiff's ability to work, while *Stone* holds that a non-severe impairment would not be expected to interfere with Plaintiff's ability to work.

At first blush, the literal difference between the two standards might appear superficial; however, their respective applications could lead to disparate results.  Unlike the ALJ's standard, *Stone* brooks no tolerance for interference with a claimant's ability to work. An impairment that has a "minimal effect" on a claimant's ability to work may very well be found to "interfere" with his ability to work.  The ALJ did not draw that necessary distinction in the instant case, as he did not include the *Stone* standard in his evaluation.  Accordingly, the ALJ applied an incorrect legal standard in determining the severity of Plaintiff's impairments in the instant case.

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).  However, the ALJ's failure to apply the *Stone* standard is a legal error, not a procedural error.  The Fifth Circuit left the district courts no discretion to determine whether such an error is harmless.  Rather, the Court mandated that "[u]nless the correct standard is used, the claim must be remanded to the Secretary for

reconsideration." *Stone*, 752 F.2d at 1106.  Because the ALJ in this case applied an incorrect standard of severity at step two, remand is required.  *See Loza v. Apfel*, 219 F.3d 378, 393, 398-99 (5th Cir. 2000).

Fifth Circuit precedent requires that this case be remanded under Plaintiff's third issue.  Disposition of his fourth and fifth issues would not be helpful on remand, and the Court does not reach these two remaining issues.

## IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's motion for summary judgment (Docket Entry No. 12), **DENIES** Defendant's motion for summary judgment (Docket Entry No. 9), **VACATES** the decision of the administrative law judge, and **REMANDS** this case for further proceedings not inconsistent with this opinion.

The Clerk will provide copies to the parties.

Signed at Houston, Texas, on this the 30th day of March, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

28