IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OBRA FOSTER, JR., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-2843 |
| | § | |
| MICHAEL ASTRUE, | § | |
| | § | |
| *Defendant*. | § | |

**AMENDED MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's motion to amend order under Rule 59(e) (Docket Entry No. 15), to which Plaintiff filed a response (Docket Entry No. 16). The Court, having considered the motion, the response, the record, and the applicable law, **GRANTS** the motion to amend order (Docket Entry No. 15), **WITHDRAWS** the original Memorandum Opinion and Order (Docket Entry No. 13), and **ORDERS** as follows.

This is an appeal from a denial of Social Security disability insurance benefits ("DIB") and supplemental security income ("SSI"). Defendant filed a motion for summary judgment (Docket Entry No. 9), to which Plaintiff filed a cross-motion for summary judgment (Docket Entry No. 12).

The Court, having considered the motions, all relevant filings, the administrative record, and the applicable law, **GRANTS** Defendant's motion for summary judgment (Docket

Entry No. 9), **DENIES** Plaintiff's cross-motion for summary judgment (Docket Entry No. 12), and **AFFIRMS** the decision of the administrative law judge.

## I.   CASE BACKGROUND

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration (the "Commissioner") regarding his claims for DIB under Title II and SSI under Title XVI of the Social Security Act ("the Act").

Plaintiff filed his application for DIB and SSI in August 2005, alleging disability due to "back problems, hand problems, [and] depression" since January 1, 2004. Tr. 86–88. At a hearing held on May 23, 2007, the administrative law judge (the "ALJ") heard testimony from Plaintiff and a vocational expert (the "VE"). Tr. 820–853. In his decision issued on October 17, 2007, the ALJ found that Plaintiff was not disabled. Tr. 17.

The Appeals Council denied Plaintiff's request for review. Tr. 5–7. Accordingly, the ALJ's decision became the Commissioner's final decision for purposes of this Court's review.

### A.   Factual Background

At the hearing held on May 23, 2007, Plaintiff testified that he was forty-seven years old and had earned a high school diploma. Tr. 822. He served in the military from 1978 to 1979, and was honorably discharged. Tr. 829. He previously worked as a carpenter, but had not worked full-time since January of 2004. Tr. 823. He occasionally worked as a day

2

laborer after January 2004, but was asked not to return because he could not get along with the other workers. Tr. 825–26.

Plaintiff stated that, two and one-half years ago, he accidentally cut the tendons on two right-hand fingers (his dominant hand) while using a power tool. It left him unable to bend the two fingers, grip or hold anything in his right hand, write without difficulty, or properly use hand tools. Tr. 827–28.

Plaintiff also testified to having painful back problems due to an old "tailbone" fracture and a curved spine, which limit his ability to sit or bend. *Id.* He stated that he receives medical care and prescription pain relievers through the Veteran's Administration ("VA"). Tr. 829. He broke his right foot two years ago and, although it healed, he can only stand for forty-five minutes to an hour before needing to sit down. Tr. 830. He broke his left leg in the early 1980s, and it continues to cause him pain. Tr. 832. Plaintiff stated that, during a typical eight-hour work day, he would be able to stand or walk for three hours and sit for two or three hours before needing to move. Tr. 830. He cannot bend over or stoop without pain, or climb stairs or ladders. Tr. 831. He could probably lift twenty pounds with his left hand. *Id.*

Plaintiff testified that he is not a "people person" and prefers to be alone. Tr. 832. He cannot tolerate people raising their voice at him, and routinely had physical and verbal confrontations with his bosses and co-workers. Tr. 833–34. He has never held a job in the past fifteen years that did not end in confrontation with a supervisor, although he made

3

efforts to avoid confrontations with customers. Tr. 834. At the time of the hearing, he was seeing a VA psychiatrist once a month. The psychiatrist was treating him with Prozac and Trazadone, which left him feeling "drugged up" in the morning. Tr. 835–36.

Plaintiff testified at the hearing that he was homeless, but received mail and telephone messages through his mother. Tr. 837. He was unable to reside with her because of conflict with his siblings. He had thought of suicide, especially after the deaths of two younger brothers and his own son. Tr. 838. He reported having trouble focusing his thoughts, and experienced paranoid thinking. Tr. 839. He sometimes heard "voices" talking to him. Tr. 840. Plaintiff acknowledged a history of drug and alcohol addiction, and stated that he underwent treatment through the VA. He denied using drugs or alcohol during the past year.

Plaintiff agreed with his attorney that, in the past, he had self-medicated his depression with alcohol and drugs. Tr. 841. He testified to having outbursts of anger and crying spells, and experiencing difficulty in maintaining concentration, persistence, and pace when trying to accomplish something. Tr. 842–43. He stated that he had been admitted to the VA hospital psychiatric unit three times since January 2004. *Id.* Although he spent most of his days on the street in isolated meditation, he testified to having days where he was able to function around people. Tr. 845–46.

4

The VE testified at the hearing that a hypothetical individual with Plaintiff's physical and mental conditions[1] would not be able to do Plaintiff's past work. Tr. 847. When asked if there were other work in the regional or national economy regarding the individual, the VE testified that there were light, unskilled jobs such as electronics worker, assembler, and sorter, of which there were over 1,000 such jobs in the immediate metropolitan area and 200,000 nationally. Tr. 847. Other sedentary work with little public contact included final assembler, order clerk, and lensing sorter or polisher, for which there were 1,000 such jobs. Tr. 848. Under cross-examination, the VE stated that the hypothetical individual would not be retained in employment if he were unable to take instruction from a supervisor and work around other people. Tr. 850. If the individual needed to take two or three unscheduled work breaks just to "get away" by himself, or had reduced productivity due to an inability to focus or concentrate, he would be unemployable. Tr. 851–852.

The ALJ issued his unfavorable decision on October 17, 2007.

## B. The ALJ's Evaluations and Findings

The ALJ made the following findings with attendant evaluations of the evidence:

---

[1]The hypothetical individual "could stand or walk about six hours in an eight hour day with normal breaks or sit for six, lifting or carrying ten pounds frequently or 20 pounds occasionally, having the option to sit or stand. The following are never [sic]: ropes, ladders or scaffolding, kneeling, and crawling. The following are occasionally: stooping . . . and crouching. Regarding handling and fingering with the right dominant, I'm talking the right ring finger and the little finger are frozen straight and are of no use. Regarding the right dominant hand, the thumb, index, and middle fingers can be used continually. Mentally limited to a simple, routine work environment having little or no contact with public." Tr. 847.

(1)     Plaintiff was insured under the Act through June 30, 2006. Tr. 19.

(2)     Plaintiff had not engaged in substantial gainful employment since January 1, 2004, the alleged onset date. *Id.*

(3)     Plaintiff had the severe impairments of drug (cocaine) and alcohol addiction, lumbar spurs, right foot problems, depression, and schizophrenia. *Id.*

(4)     Plaintiff's impairments, including the substance use disorders, met Listings 12.04 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ found that Plaintiff's mental impairments, including the substance use disorders, met the criteria for Listings 12.04 and 12.09. He stated that Paragraph B criteria were met because Plaintiff had marked difficulties in maintaining concentration, persistence, or pace, and had repeated episodes of decompensation with extended duration. Because Plaintiff's mental impairments, including the substance use disorders, caused at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, Paragraph B was satisfied.

The ALJ found Plaintiff credible regarding his asserted difficulties in maintaining concentration, persistence, and pace; in having wandering thoughts; in being hospitalized for psychiatric reasons three times since January 2004; and for being depressed and getting angry too often. Tr. 19–20.

6

(5)     If Plaintiff were to stop his substance use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities; therefore, Plaintiff would continue to have a severe impairment or combination of impairments. *Id.*

The ALJ stated that Plaintiff's physical problems would remain regardless of his drug or alcohol use.

(6)     If Plaintiff were to stop his substance use, he would not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 20.

The ALJ considered Paragraph B criteria under Listing 12.04, and determined that Plaintiff's depression and schizophrenia had a mild impact on his ability to perform daily activities; a moderate impact on his ability to maintain social functioning; a mild limitation in concentration, persistence, and pace; and that he had one or two episodes of decompensation in work or work-like settings. Tr. 20–21. He found no evidence to support Paragraph C criteria, as Plaintiff had no documented history of a mental disorder of at least two years' duration that had caused more than a minimal limitation of ability to do any basic work activity. Tr. 21.

(7)     If Plaintiff were to stop his substance use, he would have the residual functional capacity ("RFC") to perform the exertional demands of a wide range of light work, or work which is generally performed while standing or walking frequently (more or less six hours in an eight-hour work day) and required maximum lifting of twenty pounds occasionally, ten pounds frequently. Plaintiff's RFC to perform the exertional demands of

the full range of light work was reduced by the following limitations: the option to sit or stand at will without leaving the workstation; occasionally stooping and crouching; never climbing ropes, ladders, or scaffolding; never kneeling or crawling; limited handling and fingering with the right hand; and limited to a simple, routine work environment with little or no contact with the general public. *Id.*

The ALJ noted that Plaintiff stated he was unable to work because of damaged tendons in the fourth and fifth fingers of his right dominant hand; an inability to bend or grip with his right hand, use hand tools properly, or hold a hammer or saw; and back problems, swayback, knee problems, and a broken foot two years ago, which limit his ability to stand or sit for long periods of time or bend over too much. He further noted that Plaintiff attempted to work as a day laborer after January 2004, but was barred due to confrontations with other workers. Tr. 22. The ALJ noted that Plaintiff traveled on foot (or by bus when he had the money), could stand/walk forty-five minutes to an hour (before needing to sit down) in an eight-hour work day, could stand two and one-half to three hours and sit three hours in an eight-hour work day, could lift twenty pounds with his left hand, but could not bend over due to back pain, climb stairs or ladders, or bend his neck. Plaintiff preferred to be off by himself away from people, had problems with supervisors and had confrontations with them, and was fired from numerous jobs due to confrontations. *Id.*

The ALJ further noted that Plaintiff testified to taking Prozac, Trazadone, Naproxen, and a sleep medication and to seeing a psychiatrist once a month, but that he feels groggy and

8

drugged in the morning. Plaintiff has problems sleeping, has flashbacks, thinks of suicide, tries to control his anger by staying away from people, occasionally hears voices, underwent substance use treatment, and has been "clean" for a year. *Id.* Plaintiff reported drinking when depressed and having difficulty finishing projects due to problems maintaining concentration, persistence, and pace. Tr. 23. Plaintiff stated that he was hospitalized for psychiatric problems three times since January 2004 and wants to avoid being sent back to prison for aggravated assault. The ALJ was of the opinion that, if Plaintiff stopped the substance use, his medically-determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. *Id.*

The ALJ noted that physicians in Plaintiff's November 2005 medical records confirmed his back and hand problems, but that the underlying lumbar x-rays showed only mild narrowing and a small osteophyte formation. Plaintiff failed to follow his treating physician's recommendations in 1993, August 2005, and September 2005. *Id.* The ALJ noted discrepancies between Plaintiff's subjective limitations and his hospitalization records, as the records showed Plaintiff had no problem getting on and off an examining table and that he had a normal walking gait. *Id.* The ALJ further discounted Plaintiff's credibility because of his felony convictions and incarceration, his use of alcohol and illegal drugs, his lack of hospitalizations except for substance use, the lack of a work history while using drugs and alcohol, and lying to physicians regarding his drug and alcohol abuse in October of 2005.

9

*Id.* The ALJ expressly gave Plaintiff "the benefit of the doubt" regarding his claims of back and foot pain and medication-induced drowsiness.

The ALJ noted that all of Plaintiff's hospitalizations from September 1989 through November 2005 were directly related to cocaine and alcohol abuse. The ALJ observed that, at the hearing, Plaintiff was well-groomed, in good physical condition, well-spoken, and admitted to having an anger problem. Tr. 24.

(8)     If Plaintiff were to stop his substance use, he would be unable to perform past relevant work. *Id.*

(9)     Plaintiff was forty-three years old as of the alleged disability onset date, which is defined as a younger individual. *Id.*

(10)     Plaintiff had a high school diploma and spoke English. *Id.*

(11)     Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff was "not disabled," whether or not he had transferrable job skills. *Id.*

(12)     If Plaintiff were to stop his substance use, considering his age, education, work experience, and RFC, there would be a significant number of jobs in the national economy that he could perform. *Id.*

The ALJ was of the opinion that, even if Plaintiff were to stop his substance use, he would not have the RFC to perform the full range of light work. The VE testified at the hearing that a hypothetical individual with Plaintiff's RFC and background, and who did not

10

have a substance use problem, would be able to perform the requirements of such light, unskilled occupations such as electronics worker, an assembler, and a sorter, with over 1,000 such jobs available in the regional economy and 200,000 nationally. Accordingly, if Plaintiff were to stop his substance use, he would be capable of making a successful adjustment to work that exists in significant numbers in the national economy, and would not be disabled. Tr. 25.

(13) Because Plaintiff would not be disabled if he were to stop his substance use, his substance use is a contributing factor material to the determination of disability, and he has not been disabled at any time from the alleged onset date through the date of the ALJ's decision. Tr. 25.

The ALJ concluded that Plaintiff was not disabled and denied his claims. *Id.*

## II.   STANDARD OF REVIEW AND APPLICABLE LAW

A motion for summary judgment under Federal Rules of Civil Procedure Rule 56 requires the Court to determine whether the moving party is entitled to summary judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). A genuine issue of material fact exists if a reasonable fact finder could enter a verdict for the non-moving party. *Crawford v.*

*Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

Judicial review of a final decision by the Commissioner denying disability insurance benefits is limited to the determination of whether substantial evidence in the record supports the decision and whether the ALJ applied proper legal standards in evaluating the evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). If the Commissioner's decision satisfies both of these requirements, it must be affirmed. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

### A.    "Substantial Evidence"

The widely-accepted definition of substantial evidence is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carey*, 230 F.3d at 135. It is "something more than a scintilla but less than a preponderance." *Id.* The Commissioner has the responsibility of deciding any conflict in the evidence. *Id.* If the findings of fact contained in the Commissioner's decision are supported by substantial evidence appearing in the record, they are conclusive, and this Court must affirm. 42 U.S.C. § 405(g).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the Court overturn it. *See Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). In applying this standard, the Court is to review the entire record,

12

but may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that

of the Commissioner. *See Brown*, 192 F.3d at 496. In other words, the Court is to defer to

the Commissioner's decision as much as possible without making its review meaningless.

## B.    Legal Standard

In order to obtain disability insurance benefits, a claimant bears the ultimate burden

of proving that he is disabled within the meaning of the Act. *Wren v. Sullivan*, 925 F.2d 123,

125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if he is

unable to "engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment . . . which has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also*

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling

impairment must be demonstrated by "medically acceptable clinical and laboratory

diagnostic" findings. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit

the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless of whether such
> work exists in the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied for work.

*Id.*, § 423(d)(2)(A). The mere presence of an impairment is not sufficient to establish that

the claimant is suffering from a disability. Rather, a claimant is disabled only if he is

"incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d

289, 293 (5th Cir. 1992). Further, a claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured. *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990).

To determine whether a claimant is capable of performing any substantial gainful activity, the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

(1)    a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

(2)    a claimant will not be found to be disabled unless he has a "severe impairment";

(3)    a claimant whose impairment meets or is equivalent to a Listed impairment will be considered disabled without the need to consider vocational factors;

(4)    a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

(5)    if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). By judicial practice, the claimant bears the burden of proof on the first four of these steps, while the Commissioner bears the burden of proof on the fifth step. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999); *Brown*, 192 F.3d at 498. The Commissioner can satisfy his burden either by reliance on the Medical-Vocational Guidelines of the Regulations or by expert vocational testimony or other similar

evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner satisfies his burden of proof as to the fifth step, then the burden shifts back to the claimant to prove he cannot perform the work suggested. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. *Greenspan*, 38 F.3d at 236.

## III.   ANALYSIS

Plaintiff raises the following five issues in his motion for summary judgment:

(1)   Plaintiff's substance use is not a "contributing factor."

(2)   Plaintiff's mental impairment qualifies as a Listed impairment.

(3)   Plaintiff's finger impairments are "severe."

(4)   The ALJ's RFC determination is not supported by substantial evidence.

(5)   The ALJ's determination of "not disabled" is not supported by substantial evidence.

Defendant argues that the ALJ's decision should be affirmed because it applied proper legal standards and is supported by substantial evidence.

### A.   Substance Use as a Contributing Factor

Plaintiff complains that the ALJ erred in finding his substance use[2] a contributing factor material to the determination of his disability. (Docket Entry No. 12, p. 6.)

---

[2]The ALJ and the parties used the terms substance "use" and "abuse" interchangeably throughout these proceedings. The Act refers to the condition as "alcoholism or drug addiction." *See* 42 U.S.C. § 1382c(a)(3)(J).

Generally, a finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). However, if a claimant is found to be disabled, but there is evidence that he is addicted to drugs or alcohol, the ALJ must also determine whether the drug or alcohol addiction is a contributing factor material to the determination of disability. 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 404.1535(a). Substance abuse is a material contributing factor if, in its absence, the claimant's remaining limitations would not be disabling. 20 C.F.R. § 404.1535(b)(2)(I). If it is found to be a material contributing factor, then the claimant is not considered disabled and is ineligible to receive benefits. 42 U.S.C. § 1382c(a)(3)(J). The burden to prove that substance abuse is not a contributing factor material to his disability lies with the claimant. *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).

In the instant case, the ALJ found that Plaintiff's symptoms medically equaled the criteria of Listing 12.04 and 12.09 when the functional impairments resulting from his substance use were considered, but that his symptoms were *not* disabling when his substance use was excluded from consideration. Tr. 19–25. He further found that, in absence of substance use, Plaintiff retained a RFC for light work, with certain identified restrictions, and that appropriate work existed in significant numbers in the national economy. Tr. 25.

Plaintiff argues that the ALJ's finding regarding substance use as a contributing factor is not supported by substantial evidence because medical records show he continued having mental problems while "clean." As proof, Plaintiff points out that, during his October 2005

week-long hospitalization, he tested negative for illegal drugs and alcohol, but reported worsening depression, suicidal thoughts, and other mental problems. This Court notes, however, that these same records reflect Plaintiff's statement to his doctors that he had consumed cocaine and alcohol just a few days before the hospitalization. Tr. 366. These records further show that Plaintiff was given information on vocational rehabilitation, but that he declined treatment as he was "focused on obtaining disability." Tr. 369. Upon discharge from the hospital, he reported mood improvement without suicidal thoughts, and planned to return to the substance abuse program. Tr. 370. His discharge diagnoses included "polysubstance abuse." Tr. 365. He was diagnosed on May 27, 2006, with "substance-induced depressive disorder, cocaine abuse, alcohol abuse." Tr. 728.

Plaintiff's medical records further show that he was again admitted to the VA mental health unit on May 31, 2006, "for treatment of depression and polysubstance abuse." Tr. 787. He reported drinking a twelve pack of beer per day and smoking crack cocaine. Tr. 726. Hospital records dated June 2, 2006, reported that Plaintiff's "[m]ain problems are substance abuse and economic." Tr. 780. Laboratory test results dated June 1, 2006, were reported as positive for cocaine. Tr. 785. Plaintiff was reported as non-compliant with substance abuse therapies and antidepressant medications. Tr. 726, 784–85. Contrary to Plaintiff's assertion, the medical records before this Court do not reveal any mental health treatment unrelated to, or independent of, his substance abuse, any objective findings or

17

reports that Plaintiff was "clean" during the relevant time period, or that his mental health problems were unrelated to his substance use.

Plaintiff also argues that his own testimony shows that his mental impairments continued in absence of substance abuse.[3] Plaintiff testified at the hearing that he had been substance-free for almost a year, was taking Prozac and Trazadone (antidepressants), and was trying to see a VA psychiatrist once a month. Tr. 835. The prescription drugs reportedly left him "dragging," but he stated that he needed them for his depression. Tr. 836. He stated that, on a typical day, he was "in a downward mood" and had no strength. *Id*. He took sleeping pills to help him sleep and ate meals depending on his mood. Tr. 838. He complained that his mind tended to wander, and that he sometimes heard voices talking to him. Tr. 840. He had crying spells "off and on," and found it difficult to finish projects because he would lose interest. Tr. 842. On his worst days, he was angry and "just very, very moody." Tr. 845.

In evaluating these subjective complaints, the ALJ was of the opinion that, if Plaintiff discontinued his substance use, his medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of such symptoms were not entirely credible. Tr. 23. The ALJ carefully set forth those factors leading him to find Plaintiff not entirely

---

[3]Plaintiff did not submit any medical records regarding this 2006–2007 psychiatric and substance abuse therapy, and the ALJ was without benefit of any objective medical evidence supporting Plaintiff's subjective allegations of unabated mental disabilities while substance-free.

credible, including his lying about his drug and alcohol use, the lack of hospitalization for reasons other than substance abuse, and a lack of reference to any walking or standing problems in his hospitalization records. *Id.* The ALJ did accept Plaintiff's claims of drowsiness caused by his medications and back and foot pain.

It was Plaintiff's burden to prove that substance abuse was not a contributing factor material to his disability claim. *Brown.* Based on this Court's review of the medical evidence and record as a whole, Plaintiff did not, and does not, meet his burden of proving that his mental impairments continued unabated in absence of substance abuse. Substantial evidence supports the ALJ's finding that Plaintiff's substance use was a material contributing factor to his disability, and no error is shown.

### B. Listed Mental Impairment

Plaintiff argues that his mental impairments that are not addiction-related meet or equal the criteria for a listing under 12.03 and/or 12.04, and that the ALJ's determination to the contrary is not supported by substantial evidence.

Listing 12.03, regarding schizophrenic, paranoid, and other psychotic disorders, requires the following:

> 12.03   Schizophrenic, Paranoid and Other Psychotic Disorders: Characterized by the onset of psychotic features with deterioration from a previous level of functioning. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A.      Medically documented persistence, either continuous or intermittent, of one or more of the following:

     1.      Delusions or hallucinations; or

     2.      Catatonic or other grossly disorganized behavior; or

     3.      Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:

         a.      Blunt affect; or

         b.      Flat affect; or

         c.      Inappropriate affect;

Or

     4.      Emotional withdrawal and/or isolation;

And

B.      Resulting in at least two of the following:

     1.      Marked restriction of activities of daily living; or

     2.      Marked difficulties in maintaining social functioning; or

     3.      Marked difficulties in maintaining concentration, persistence, or pace; or

     4.      Repeated episodes of decompensation, each of extended duration;

Or

C.      Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities,

20

with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1.  Repeated episodes of decompensation, each of extended duration; or

2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Plaintiff further argues that he meets or equals the following criteria for a 12.04

Listing:

12.04  Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A.  Medically documented persistence, either continuous or intermittent, of one of the following:

1.  Depressive syndrome characterized by at least four of the following:

a.  Anhedonia or pervasive loss of interest in almost all activities; or

b.  Appetite disturbance with change in weight; or

c.  Sleep disturbance; or

21

        d.      Psychomotor agitation or retardation; or

        e.      Decreased energy; or

        f.      Feelings of guilt or worthlessness; or

        g.      Difficulty concentrating or thinking; or

        h.      Thoughts of suicide; or

        I.      Hallucinations, delusions or paranoid thinking; or

*   *   *   *

And

B.    Resulting in at least two of the following:

    1.    Marked restriction of activities of daily living; or

    2.    Marked difficulties in maintaining social functioning; or

    3.    Marked difficulties in maintaining concentration, persistence, or pace; or

    4.    Repeated episodes of decompensation, each of extended duration;

Or

C.    Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1.    Repeated episodes of decompensation, each of extended duration; or

    2.    A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or

22

> change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Plaintiff necessarily argues that he meets or equals these Listing criteria *independently of* symptoms and problems attributable to his drug and alcohol abuse. However, as reflected in the Court's earlier discussion, the objective medical evidence does not separate plaintiff's addiction-related impairments from any mental impairments that are *not* addiction-related. Plaintiff attempts to support his argument with a paragraph generally summarizing the objective medical evidence and his own subjective complaints, but fails to correlate such evidence to any particular criteria under 12.03 or 12.04 and show that such symptoms are unrelated to his substance use.

Listings criteria are "demanding and stringent," and the mere diagnosis of a condition will not suffice. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Under sections 404.1525(d) and 416.925(d), the claimant must have a medically determinable impairment that satisfies all of the criteria in the listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). The burden of proof rests with a claimant to provide and identify medical signs and laboratory findings that support all criteria for a step three listing determination. *Id.*

Contrary to Plaintiff's contentions, there is substantial evidence in the record to support the ALJ's finding that Plaintiff's impairments, when considered with his substance abuse disorder, meet the Listing criteria. Plaintiff fails to meet his burden of proving that, in absence of his substance use disorder, his mental impairments meet or equal a Listing criteria, and no error is shown.

### C.   "Severe" Finger Impairments

Under his third issue, Plaintiff argues that the ALJ improperly evaluated the impairment severity of his two "frozen" right-hand fingers at step two. Plaintiff testified that, having accidentally damaged tendons on the fourth ("ring") and fifth ("little") fingers of his dominant hand in 2003, "I can't do anything. . . . I can't bend them at all, and so I'm not able to grip anything or . . . hold anything with my hand, barely can write with it." Tr. 827. He testified he was unable to use hand tools properly, which hurt his job performance. In answer to a question regarding his ability to use any type of hand tool with his right hand, he testified, "I can't do it. Not with this hand." Tr. 828. The Court will refer to these impairments as Plaintiff's "finger impairments."

According to his medical records, Plaintiff was seen on July 29, 2005, for follow-up from a 2003 laceration to his right hand; he had cut the palmar surface of his right hand over the small, ring, and long fingers. Tr. 493. His physicians noted damage to the small and ring finger flexor tendons of the right hand, and stated that he was a "good candidate for surgical correction of [the] flexor tendons." *Id.* Passive range of motion exercise through

24

occupational therapy was recommended. *Id.* He was given referrals for reconstructive surgery and occupational therapy in 2003, but failed to follow through. An October 2005 physical examination reflected Plaintiff's inability to flex his right fourth finger at the proximal and distal interphalangeal joints or his fifth finger at the distal interphalangeal joint. Tr. 367. Plaintiff argues that these finger impairments qualify as "severe" and that the ALJ applied an incorrect step two legal standard.

At step two of the disability analysis, the ALJ considers whether the claimant has a medically determinable impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.*, § 404.1520(c). In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Fifth Circuit interpreted the term "severe" found in 20 C.F.R. § 404.1520(c) and set forth the following legal standard applicable at step two of the evaluation process:

> An impairment can be considered as not severe only if it is a slight abnormality having such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

*Id.* at 1101; *see also Loza v. Apfel*, 219 F.3d 378, 390–91 (5th Cir. 2000) (reaffirming this standard following federal regulatory revisions). The Fifth Circuit then held that, in absence of an express reference to the *Stone* opinion itself, another opinion with the same effect, or an express statement of this standard, use of an improper standard would be presumed for

cases terminated at step two of the evaluation process, requiring automatic remand. 752 F.2d at 1106.

In the instant case, the ALJ did not reference *Stone* or an analogous opinion, but set forth the following standards for his step two evaluation:

> An impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is 'not severe' when medical or other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to do work.

Tr. 17.

In concluding that Plaintiff had severe impairments of drug and alcohol addiction, lumbar spurs, right foot problems, depression, and schizophrenia, the ALJ stated that,

> Since these impairments impose more than a minimal effect on the claimant's ability to perform some basic work activities, they are considered 'severe' impairments in accordance with Social Security Rulings 85-28 and 96-3p.

Tr. 19. Because the ALJ did not expressly reference *Stone* or an equivalent opinion, this Court must assume that the ALJ applied an improper step two standard unless the standards otherwise set forth by the ALJ are "an express statement of [the *Stone*] standard." *Stone*, 752 F.2d at 1106.

As stated, a severe impairment under the regulations is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Under *Stone*, an impairment

is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." 752 F.2d at 1101; *see also Story v. Astrue*, 294 F. App'x 883, 884 (5th Cir. 2008) (unpublished); *Robinson v. Barnhart*, 183 F. App'x 451, 455 (5th Cir. 2006) (unpublished).

Here, the ALJ stated that "an impairment or combination of impairments is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities," citing 20 C.F.R. § 404.1520(c). Tr. 17. He further stated that "an impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have *no more than a minimal effect* on an individual's ability to work," citing 20 C.F.R. §§ 404.1521 and 416.921 and Social Security Rulings 85-28, 96-3p, and 96-4p. *Id.* (emphasis added). This latter statement is inconsistent with *Stone*; under the Fifth Circuit's standard, a non-severe impairment "would *not be expected to interfere* with the individual's ability to work." 752 F.2d at 1104–05 (emphasis added). Stated succinctly, the ALJ's standard recognized that a non-severe impairment could have a minimal effect on Plaintiff's ability to work, while *Stone* holds that a non-severe impairment would not be expected to interfere with Plaintiff's ability to work.

At first blush, the literal difference between the two standards might appear superficial; however, their respective applications could lead to disparate results. Unlike the ALJ's standard, *Stone* brooks no tolerance for interference with a claimant's ability to work.

An impairment that has a "minimal effect" on a claimant's ability to work may very well be found to "interfere" with his ability to work. The ALJ did not draw that necessary distinction in the instant case, as he did not apply the *Stone* standard in his evaluation. Accordingly, the ALJ applied an incorrect legal standard in determining the severity of Plaintiff's impairments in the instant case.[4]  In his motion for summary judgment, Plaintiff argues that the ALJ's termination of the evaluation of his finger impairments at step two under an improper standard requires remand. In his motion to amend order, Defendant concedes that the ALJ's step two standard was not identical to the language set forth in *Stone*, but argues that any error is harmless and negates any need for remand. (Docket Entry No. 15, p. 3.)

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). However, the ALJ's failure to apply the *Stone*

---

[4]The Court notes that, in one unpublished Fifth Circuit Court of Appeals decision, the court tacitly approved application of a severity standard not dissimilar from the one used here. *See Brunson v. Astrue*, 387 F. App'x 459, 2010 WL 2802372, at*2–3, (5th Cir. 2010) ("An impairment is severe if it significantly limits an individual's physical or mental abilities to do basic work activities; it is not severe if it is a slight abnormality or combination of slight abnormalities that has no more than a minimal effect on the claimant's ability to do basic work activities."). Although the *Brunson* court cited *Stone* as its source, this language does not appear in *Stone*. Unpublished opinions issued on or after January 1, 1996, have no precedential value. 5TH CIR. R. 47.5.4. Because *Stone* is a published opinion, this Court will assign no precedential value to *Brunson*. Decisions from the Southern District of Texas are in conflict as to the standard utilized in *Brunson*. *See Brooks v. Astrue*, 2011 WL 1231605 (S.D. Tex. 2011) (accepting *Brunson*-type language); *Johnson v. Astrue*, 2010 WL 148411 (S.D. Tex. 2010) (rejecting *Brunson*-type language). The Northern District of Texas has consistently construed *Brunson*-type language as improper under *Stone*. *See Hall v. Astrue*, 2011 WL 2671518, *6 (N.D. Tex. 2011), and the cases cited therein.  Until expressly overruled or modified by the Fifth Circuit, this Court will follow *Stone*.

standard is a legal error, not a procedural error. In *Stone*, the Fifth Circuit left the district courts no discretion to determine whether such error is harmless. Rather, the Court mandated that "[u]nless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." 752 F.2d at 1106. Because the ALJ in this case applied an incorrect standard of severity at step two, remand would appear necessary. *See Loza v. Apfel*, 219 F.3d 378, 393, 398–99 (5th Cir. 2000).

In his motion to amend order, Defendant contends that post-*Stone* decisions by the Fifth Circuit show that an ALJ's failure to follow *Stone* can constitute harmless error, or no error, and requests the Court to reconsider its decision that automatic remand is required here. Defendant directs the Court to *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986), wherein the Fifth Circuit stated that,

> *Stone* does not require a wholesale remand of all severity cases. A case will not be remanded simply because the ALJ did not use 'magic words.' We remand only where there is no indication the ALJ applied the correct standard.

*Id. Hampton* does not help Defendant; in the instant case, there is not only no indication that the ALJ applied the correct standard, there is a clear indication that he applied an incorrect standard. Further, *Hampton* lends no support to Defendant's argument that district courts retain discretion to determine whether a *Stone* violation can constitute harmless error. To the contrary, the above excerpt from *Hampton* makes clear that remand is necessary where there is no indication that the ALJ applied the correct standard.

The Court does, however, agree with Defendant's underlying argument that *Stone* error at step two of the evaluation process does not require automatic remand in all cases. In his motion to amend order, Defendant urges the following five reasons why the ALJ's incorrect severity standard at step two does not require remand in this case.

(1)    The *Stone* automatic remand applies only to cases terminated at step two of the sequential five-step evaluation process.

Defendant correctly argues that the holding in *Stone* was made in response to the Fifth Circuit's concern over a systematic premature denial of benefits at step two due to application of improper severity standards. (Docket Entry No. 15, p. 3.) This is clear from the *Stone* decision itself. 752 F.2d at 1101–02.

The parties here do not dispute that *Stone* and post-*Stone* Fifth Circuit cases hold that an ALJ's failure to apply the proper severity standard requires remand when the ALJ ends his analysis at step two and finds that a claimant is not disabled because he has no severe impairments. Their disagreement arises in context of when, and if, remand is required for application of an improper severity standard under other circumstances. If *Stone* is to apply only to cases completely terminated at step two, then the ALJ's application of an improper severity standard in this case is of no consequence, as the case was not terminated at step two.

Numerous district court decisions from various Texas federal courts have addressed the automatic *Stone* remand in cases other than ones completely terminated at step two. *See*

*Hall v. Astrue*, 2011 WL 2671518, *6 (N.D. Tex. 2011) and cases sited therein. The Fifth

Circuit itself has determined that a *Stone* remand is unnecessary if the ALJ applies an

improper severity standard but finds the impairment severe and continues the evaluation

beyond step two. *See, e.g., Lopez v. Bowen*, 806 F.2d 632, 634 n. 1 (5th Cir. 1986). Further,

the Fifth Circuit has addressed *Stone* in context of cases involving "split" severity

impairments where one impairment was terminated at step two but others were evaluated

through step five. *See Lynch v. Shalala*, 19 F.3d 14, 1994 WL 93270 (5th Cir. 1994).

Accordingly, that the ALJ did not completely terminate Plaintiff's case at step two does not

end this Court's analysis under *Stone*.

> (2)    *Stone* error is harmless if the ALJ finds the impairment severe under an
> improper severity standard but continues the evaluation beyond step two.

As a corollary to his argument above, Defendant contends that a *Stone* remand is not

needed in the instant case because the ALJ continued the evaluation process beyond step two.

Under this argument, any step two error becomes "harmless" once the ALJ proceeds beyond

step two. This argument need not be addressed in detail, as it is factually inapposite to the

instant case; the ALJ did not find Plaintiff's finger impairments "severe" under the improper

severity standard at step two.

> (3)    *Stone* error is harmless if one impairment is found non-severe but others are
> found severe under an incorrect severity standard and the case is terminated at
> step five, as was the case here.

31

As shown above, remand is clearly mandated under *Stone* if an incorrect severity standard is applied to a single impairment and the entire case is terminated at step two based on non-severity. Less clear is whether remand is required if there are multiple impairments and some are found severe under an incorrect severity standard and the case proceeds through the remaining steps; that is, evaluation of only a certain impairment, but not the entire case, is terminated at step two. It is particularly unclear here, as the ALJ made no express finding that the finger impairments were not severe.

There is little agreement among the district courts on this issue, and currently even less guidance from the Fifth Circuit. For instance, decisions from the Northern District of Texas generally hold that *Stone* error requires remand in "split" cases involving multiple impairments. *Hall v. Astrue,* 2011 WL 2671518, *6 (N.D. Tex. 2011); *Jones v. Astrue,* 2011 WL 2924093, *5 (N.D. Tex. 2011); *Bradford v. Astrue,* 2011 WL 1297528, *6 (N.D. Tex. 2011); *Craaybeek v. Astrue,* 2011 WL 539132, *6 (N.D. Tex. 2011); *Crotzer v. Astrue,* 2010 WL 4877270, *6 (N.D. Tex. 2010); *Phillips v. Astrue,* 2010 WL 4281984, *6 (N.D. Tex. 2010). One very recent Northern District decision, however, has reconsidered this issue as to "split" impairment decisions. In *Jones v. Astrue,* 2011 WL 4498872 (N.D. Tex. 2011), the court remarked that:

> [T]he undersigned previously has reversed and remanded on *Stone* grounds where the ALJ used the incorrect severity standard. Nevertheless, this case marks the first time that the government has squarely presented and adequately briefed before the undersigned its argument that *Stone* error is harmless if the ALJ continues beyond step two of the sequential analysis.

32

*Id.*, at *5 (citations omitted). The court noted that *Stone* itself limited its application to "cases where the disposition has been on the basis of nonseverity." *Id.* (citing *Stone*, 752 F.2d at 1106.) The court continued:

> Indeed, numerous Fifth Circuit authorities state that reversal based on a *Stone* error is not required if the ALJ does not terminate the case at step two of the sequential analysis. *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir.1987) (finding that appellant's argument that the ALJ erred in failing to find her back problems severe was not grounds for a remand because the case did not implicate the 'non-severity' of plaintiff's condition since the ALJ continued through step four of the sequential analysis); *Jones v. Bowen*, 829 F.2d 524, 527 n. 1 [sic] (no *Stone* error where ALJ properly found that the claimant's hypertension was mild and proceeded through step five, rather than denying benefits prematurely based on an improper determination of 'non-severity'); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987) (dicta stating that even though the ALJ failed to cite to Stone, the claimant's *Stone* argument was irrelevant to the disposition of the case because the case was not decided at step two; specifically, the ALJ found that the claimant could return to his past relevant work, an inquiry unaffected by the test set forth in *Stone* ); *Lopez v. Bowen*, 806 F.2d 632, 634 n. 1 (5th Cir. 1986) (no *Stone* error occurred where the ALJ found that the claimant did suffer from 'severe' impairments, but found that the impairments did not prevent him from doing his past relevant work); *see also Anthony v. Sullivan*, 954 F.2d 289, 294 (5th Cir. 1992) (stating that *Stone* merely reasons that the severity regulation cannot be applied to summarily dismiss, without consideration of the remaining steps in the sequential analysis, claims of those whose impairment is more than a slight abnormality and noting that if the claimant does not have a 'severe' impairment, the ALJ typically will deny the claim without consideration of the remaining steps in the sequential analysis).

*Id.*, at *6 (internal quotations omitted, emphasis omitted). The court distinguished the scenario from that involved in *Loza*:

> This is to be distinguished from the situation wherein the ALJ commits a *Stone*
> error by applying an incorrect severity standard, explicitly rejects one or more
> of the claimant's impairments as non-severe based on that error, and proceeds
> to the later steps of the sequential analysis only with respect to other claimed
> impairments. *See Loza v. Apfel*, 219 F.3d 378, 393, 399 (5th Cir. 2000).

*Id.*, at *7. The court concluded that, although the ALJ had applied an improper severity standard to certain impairments at step two in his case, the ALJ explicitly found some impairments "severe" and addressed the non-severe impairments at step four. "Thus," the court concluded, "there is no ground for reversal because the ALJ proceeded beyond step two in the sequential analysis in discussing all of Plaintiff's impairments." *Id.*

That the "split" terminations of different impairments at step two and step five can be separately reviewed is seen in *Lynch v. Shalala*, 19 F.3d 14, 1994 WL 93270 (5th Cir. 1994). In *Lynch*, the ALJ determined that the claimant's mental impairment was not severe and terminated the evaluation at step two. The ALJ determined that the claimant's back impairment, however, was severe and continued the evaluation through step five. On appeal, the Fifth Circuit held that the ALJ had applied a correct severity standard in terminating evaluation of the mental impairment at step two, and that it was supported by substantial medical evidence. Significantly, and contrary to Defendant's position in his motion to amend, the Fifth Circuit did *not* dispense with consideration of the step two argument in light of the ALJ's continuation of the evaluation through step five as to other impairments. Thus, this Court does not accept Defendant's argument that *Stone* error is automatically harmless if the ALJ evaluates any impairment through step five.

34

(4)    *Stone* error is harmless if the impairment found to be non-severe under an improper standard  is subsequently referenced as a limitation in hypothetical questions to the VE for purposes of evaluating RFC, as was the case here.

Defendant next argues that any error by the ALJ under *Stone* was harmless because the ALJ continued his evaluation beyond step two as to Plaintiff's other impairments and categorized Plaintiff's finger impairments as limitations for purposes of RFC and his hypothetical questions to the VE.  In support, Defendant cites 20 C.F.R. § 404.154(a) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe'. . . when we assess your residual functional capacity") and Social Security Ruling 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").  In posing hypothetical questions to the VE during the hearing, the ALJ specifically restricted Plaintiff to limited handling and fingering as to his right hand, reflecting Plaintiff's finger impairments documented in the medical records.  Tr. 21, Finding 7; 847.

Support for Defendant's argument is anecdotal dicta at best.  In *Jones v. Astrue*, 2011 WL 4498872 (N.D. Tex. 2011), as discussed above, the court noted that the ALJ had referenced the claimant's non-severe impairments as limitations during the step four evaluation of RFC.  The district court found this sufficient to affirm the ALJ's denial of disability benefits, even though the ALJ had applied an incorrect severity standard at step two.

35

Defendant also cites *Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000), in support of his

contention that *Stone* error at step two does not warrant automatic remand if other

impairments are evaluated through step five. To the contrary, the Fifth Circuit held in *Loza*

that remand was required under *Stone* regarding evaluation of the claimant's mental

impairment, which had been found not severe under a presumptively incorrect standard:

> The ALJ did not set forth the standard as it was construed in *Stone*, refer to
> *Stone* or another decision of this court to the same effect, or expressly state that
> the construction this court gives to 20 C.F.R. § 404.1520(c) was used.
> Consequently, in accordance with our holding in *Stone*, we must assume that
> the ALJ and Appeals Council applied an incorrect standard to the severity
> requirement, reverse the magistrate's judgment dismissing Mr. Loza's claim,
> and cause the case to be remanded to the Commissioner for reconsideration.

*Id.* at 393. Independently, the Fifth Circuit also found that the ALJ's determination that the

claimant's mental impairment was not severe was not supported by substantial evidence.

*Loza* does not support Defendant's argument that a remand is not necessary in the instant

case.

> (5)     *Stone* error is harmless if the result would be the same had the ALJ applied the
> correct severity standard, as the denial of benefits was not based on a finding
> of non-severity.

In *LeBlanc v. Chater*, 83 F.3d 419, 1996 WL 197501 (5th Cir. 1996), the Fifth Circuit

recognized that, if the evidence supports the ALJ's step two severity finding under the *Stone*

standard as well as under the incorrect standard, "it would be imprudent to remand solely for

the [ALJ] to chant the magical 'slight impairment' incantation in its opinion." *Id.* at *2. "On

the other hand," continued the Fifth Circuit, "if the record is not clear, or if there is any doubt

whether the evidence can satisfy both standards, remand is appropriate and necessary." *Id.* In affirming the decision despite *Stone* error, the court stated, "We can only conclude that upon remand the [ALJ]'s conclusion would remain the same after expressly citing and applying the *Stone* standard. Under these circumstances, remand is not necessary." *Id.* at *4.

In the instant case, the evidence in the record makes clear that the disability outcome would remain the same if the correct standard were applied, and remand is not required, because benefits were denied on grounds other than non-severity. In denying disability, the ALJ made the following conclusion:

> After careful consideration of all the evidence, the undersigned Administrative Law Judge concludes the claimant is under a disability, but that a substance use disorders [sic] is a contributing factor material to the determination of disability. Accordingly, the claimant has not been disabled under the Social Security Act at any time from the alleged onset date through the date of this decision.

Tr. 17. The ALJ made the following findings relevant to his conclusion:

> 3.   The claimant has the following severe impairments: *drug and alcohol addiction (cocaine)*, lumbar spurs, right foot problems, depression, and schizophrenia.
>
> \*   \*   \*   \*
>
> 5.   If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.
>
> \*   \*   \*   \*

37

7. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform the exertional demands of a wide range of light work, or work which is generally performed while standing/walking frequently (more or less six-hours in an eight-hour workday) and requires maximum lifting of twenty pounds occasionally, ten pounds frequently. The claimant's residual functional capacity to perform the exertional demands of the full range of light work is reduced by the following limitations: the option to sit/stand at will without lea[v]ing the workstation; occasionally stooping and crouching; never climbing ropes, ladders, or scaffolding; never kneeling or crawling; limited handling and fingering with the right hand; and limited to [a] simple, routine work environment with little or no contact with the general public.

8. If the claimant stopped the substance use, the claimant would be unable to perform past relevant work.

\*   \*   \*   \*

12. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform.

13. *Because the claimant would not be disabled if he stopped the substance use, the claimant's substance use disorders* [sic] *is a contributing factor material to the determination of disability.* Thus, the claimant, has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

Tr. 19–21, 24–25 (citations omitted, emphasis added). Because the ALJ determined that Plaintiff's substance abuse was a contributing factor to his disability, Plaintiff was not disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1535(a), (b)(1), (2); 416.935(a). This would have remained the same under the facts of this case had the ALJ categorized Plaintiff's finger impairments as "severe." In view of the record as a whole, it

38

would be imprudent to remand this case to the ALJ in light of Plaintiff's overriding and contributory substance abuse disorder finding.

Further, because the ALJ denied Plaintiff benefits based on his substance abuse being a contributing factor to his disability, Plaintiff was not denied benefits based on non-severity of his impairments. *Stone* does not require remand under these circumstances. *See Nicholson v. Massanari*, 2001 WL 564157, at *1 (5th Cir. 2001) ("[T]he ALJ did not apply the wrong legal standard because the decision to deny [the claimant] benefits was not based on a finding of non-severity."). *See also Jones v. Bowen*, 829 F.2d 524, 526 n. 1 (5th Cir. 1987); *Lopez v. Bowen*, 806 F.2d 632, 634 n. 1 (5th Cir. 1986).

Consequently, any failure of the ALJ to apply the *Stone* severity standard in evaluating Plaintiff's finger impairments at step two does not require automatic remand under the circumstances of this case.

### D. Improper RFC Determination

Plaintiff argues that the ALJ made an improper determination of his Residual Functional Capacity at step four. The ALJ's RFC determination was as follows:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform the exertional demands of a wide range of light work, or work which is generally performed while standing/walking frequently (more or less six-hours in an eight-hour workday) and requires maximum lifting of twenty pounds occasionally, ten pounds frequently. The claimant's residual functional capacity to perform the exertional demands of the full range of light work is reduced by the following limitations: the option to sit/stand at will without lea[v]ing the workstation; occasionally stooping and crouching; never climbing ropes, ladders, or scaffolding; never kneeling or crawling;

limited handling and fingering with the right hand; and limited to simple, routine work environment with little or no contact with the general public.

\*    \*    \*    \*

The claimant testified that he is unable to work because he has problems with his right hand, has bad tendons in the 4th and 5th fingers, is unable to bend or grip with his right dominant hand, is not capable of using hand tools properly, cannot hold a hammer or a saw, has back problems, cannot sit long or bend over too much, has swayback, has knee problems, had a broken foot 2 years ago, and cannot stand too long because his foot swells. He testified that he has occasionally tried to do day labor since January 2004 at a labor hall but that it had too much drama and complications in the hall and that he has been barred from there due to confrontations with other workers. He testified that he gets around by walking (by bus if he has money), that he can stand/walk about 45 minutes to an hour in an 8-hour workday, can stand about 2 1/2 to 3 hours, can sit 3 hours in an 8-hour workday, can lift 20 pounds with his left hand, but cannot bend due to back pain, cannot climb stairs or ladders, and cannot bend his neck because it locks up on him. He testified that he takes pain medication as treatment but prefers to be off to himself away from people, and has had problems with supervisors, has had physical confrontations with them, and has been fired for that on every other job.

The claimant testified that he has been taking prescription medications, sees a psychiatrist, Dr. Powell at the Veteran's Administration, once a month, and takes Prozac, a sleep medication, Trazodone, and Naproxen. He testified that [his] primary care doctor gave him pain medication for his back that makes him groggy, feels drugged in the morning, feels like he has no strength, has problems sleeping, has flashbacks, has thought about suicide, tries to stay away from people to keep from being angry, occasionally does not know what he is thinking, hears voices talking to him, has had drug and alcohol problems in the past, went to the VA program and another program at Riverside Hospital, has been clean about a year, would only drink when he was depressed, has problems finishing what he starts, loses interest after staring and before completing, and has difficulty maintaining concentration, persistence, and pace. He testified that he has been hospitalized about 3 times since January 2004 at the VA for psychiatric reasons, was getting depressed and getting angry too often, and wanted to see what the problem was before being sent back to the penitentiary for aggravated assault.

If the claimant stopped the substance use, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

Upon reviewing the medical evidence in November 2005, a state agency reviewing physician makes note that the claimant's back and hand problems are supported by lumbar x-rays taken July 2005 as well as [an] evaluation for plastic therapy [sic] December 2003 and July 2005. However, lumbar x-rays show only mild narrowing and a small osteophyte formation. Furthermore, the claimant is noted to have failed to follow-up on recommendations by treating physicians in 1993, in August 2005, and in September 2005. The claimant's credibility is called [in]to question when the claimant display is [sic] difficulties with standing and walking upon examination on July 28, 2005, compared to treatment notes during lengthy hospitalizations that fail to note these behaviors. The claimant's lack of credibility is also supported by a state agency reviewing physician's opinion upon reviewing the record that the claimant displayed no problems getting on and off an examination table and was observed to have a normal gait during examinations.

The undersigned's opinion of the claimant's credibility is further supported by felony convictions and subsequent incarceration, the use of alcohol and unprescribed [sic] drugs against medical advice, the lack of hospitalization outside of drug and alcohol abuse, the lack of stature work history while involved in drug and alcohol abuse, and lying to a consultative examining physician regarding drug and alcohol abuse in October 2005.

The undersigned does however give the claimant the benefit of the doubt regarding back pain and foot pain as well as the use of Naproxen and Prozac which causes drowsiness.

In terms of the opinion evidence, the residual functional capacity conclusions reached by the physicians employed by the United States Disability Determination Services also supported a finding of 'not disabled' if the substance use was stopped. Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions deserve some

weight, particularly in a case like this in which there exists a number of other reasons to reach similar conclusions (as explained throughout this decision).

In reaching the above residual functional capacity, the undersigned has considered all evidence relating to how the claimant would function if the substance use was stopped. The undersigned acknowledges that the claimant has had several hospitalizations documented in treatment notes covering the period from September 7, 1989, through November 4, 2005, from the Veteran's Administration with hospitalizations in 1994, 1995, July 2005, August 2005, and October 2005. However, these same medical reports document that each hospitalization directly related to cocaine and alcohol abuse. During the hearing, it is noted that the claimant is well groomed, is in good physical condition, is well spoken, and admits that he has an anger problem.

Thus, as discussed above, the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision if the substance use was stopped. In addition, consideration of the factors described in 20 CFR 404.1529(c)(3) and 416.929(c)(3) and Social Security Ruling 96-7p also leads to a conclusion that the claimant's allegations of disabling symptoms and limitations cannot be accepted if the substance use was stopped, and that the residual functional capacity finding in this case is justified.

Tr. 22–24 (exhibit references omitted).

Plaintiff contends that the RFC finding was not based upon substantial evidence or was against the weight of substantial evidence. Specifically, he argues that he cannot perform the standing and walking demands of light work in that he can only stand/walk for up to three hours in an eight-hour workday and sit for only a total of three hours, if allowed to alternate positions. He further argues that he cannot bend. In support, Plaintiff relies on his own subjective testimony given at the hearing.

42

Plaintiff did not affirmatively state at the hearing that he can never bend. To the contrary, and as shown in the ALJ's step four analysis, Plaintiff gave inconsistent statements regarding his ability to bend: "cannot bend over much," "cannot bend due to back pain," "cannot bend his neck because it locks up on him." In listing Plaintiff's work limitations, the ALJ expressly stated that Plaintiff could never climb ropes, ladders, or scaffolding, and could only occasionally stoop or crouch.

In finding that Plaintiff could stand/walk for at least six hours of an eight-hour work day, the ALJ expressly limited this to work having an option for Plaintiff to sit/stand at will without leaving the workstation. The ALJ noted the discrepancies between the medical records and Plaintiff's own testimony of being unable to stand longer than 2 1/2 to 3 hours or sit longer than 3 hours per eight-hour workday.

The ALJ further found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible, based on Plaintiff's failures to follow his treating physicians' recommendations in 1993 and 2005; no evidence of the professed limitations during his lengthy hospitalizations; an examining physician's observation that Plaintiff had no difficulty getting on and off an examination table and exhibited normal gait; Plaintiff's felony convictions and incarcerations; his use of alcohol and illegal drugs against medical advice; his lack of hospitalizations outside his substance abuse; and his lying to a consultative examining physician in 2005 regarding his substance

43

abuse. The ALJ also noted, and gave proper weight to, determinations reached by state physicians that Plaintiff would not be disabled if his substance abuse were stopped.

Plaintiff further argues that his finger impairments preclude him from performing light work. However, the ALJ specifically noted this limitation in his analysis and determination of Plaintiff's RFC. Moreover, the ALJ acknowledged Plaintiff's mental impairment, particularly as to his substance abuse, and found that the substance abuse disorder was a contributing factor material to the disability determination. Therefore, under 42 U.S.C. § 1382c(a)(3)(J), Plaintiff was ineligible to receive disability benefits. Plaintiff "bears the burden of proving that drug or alcohol addiction is not a contributing factor material to [his] disability." *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). Plaintiff has not met this burden, and he cannot receive disability benefits as a matter of law. *See, e.g., Smith v. Astrue*, 2008 WL 2325637 (5th Cir. 2008).

The substantial evidence supports the ALJ's residual functional capacity assessment of light work, as reduced by the limitations found by the ALJ. In light of the ALJ's finding that Plaintiff's substance abuse disorder was a contributing factor material to his disability determination, no reversible error is shown.

### E.     Improper Finding at Step Five

Plaintiff alleges that the ALJ erred in finding at step five that a significant number of jobs existed in the national economy that Plaintiff could perform at the light, unskilled level. In support, he contends that the ALJ failed to evaluate properly all of Plaintiff's impairments

and improperly determined his RFC. In making this argument, Plaintiff refers to his "foregoing discussion" and does not specifically identify the improperly evaluated impairments or RFC analysis errors. To the degree Plaintiff is reasserting his complaints regarding his finger impairments and the ALJ's step four analysis, the Court has found no error under these earlier arguments. The ALJ properly included Plaintiff's limitations or restrictions in his hypothetical questions to the vocational expert and in his findings, including those caused by the finger impairments. Tr. 43, 846–47. The vocational expert testified that an individual with these restrictions could not perform Plaintiff's past work, but could work as an electronics worker, assembler, and sorter. Tr. 847. The vocational expert testified that these jobs numbered in the hundreds in the local economy and in the hundreds of thousands in the national economy, Tr. 847. An ALJ is entitled to rely on the testimony and conclusions of a vocational expert. *See Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995); *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). No error is shown.

Further, as previously noted by the Court, the ALJ found that Plaintiff's substance abuse disorder was a contributing factor material to the disability determination. Plaintiff has not met his burden of proving that his substance abuse was not a contributing factor material to his disability, and Plaintiff is ineligible to receive disability benefits as a matter of law.

## IV.   CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

(1)    Defendant's motion to amend order (Docket Entry No. 15) is **GRANTED**.

(2)    The Court's original Memorandum Opinion and Order (Docket Entry No. 13) is **WITHDRAWN**.

(3)    Defendant's motion for summary judgment (Docket Entry No. 9) is **GRANTED**.

(4)    Plaintiff's cross-motion for summary judgment (Docket Entry No. 12) is **DENIED**.

(5)    The decision of the Administrative Law Judge is **AFFIRMED**.

(6)    Any and all pending motions are **DENIED AS MOOT**.

The Clerk will provide copies to the parties.

Signed at Houston, Texas, on this the _10_ day of November, 2011.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE